UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION** at **LEXINGTON**

SALINA RILEY,                    )
                                 )
    Plaintiff,                   )    Civil No. 16-cv-157-JMH
                                 )
vs.                              )    **MEMORANDUM OPINION & ORDER**
                                 )
WELLS FARGO BANK, N.A.,          )
                                 )
    Defendant.                   )

** ** ** ** ** ** ** **

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings [DE 13, Plaintiff's Response at DE 19; Defendant's Reply at DE 22] as well as Plaintiff's Motion to Amend Complaint [DE 23; Defendant's Response at DE 24]. The Court has considered these motions alongside one another, for they ask the Court to consider whether the averments made or proposed are legally sufficient to proceed toward trial at this point in the case.

"The court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). "[T]he thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). In exercising its broad discretion with respect to requests for leave to amend, the

trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."[1] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)). In determining whether dismissal on the basis of the legal sufficiency of the complaint is appropriate, a complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). The United States Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This "requires

---

[1] The Court rejects Defendant's suggestion that it would be harmed by undue delay in amending the Complaint because in its Response to the Motion to Amend it suggests that the original Complaint and the tendered Amended Complaint are so substantially identical in many ways as to be informed by the Motion to Dismiss the original Complaint. Those similarities undermine any suggestion that it will be harmed by this amendment.

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. Accordingly, a complaint must be dismissed—and amending a complaint is futile—if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

With respect to Defendant's motion,

> "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973). But we "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 566, 581-82 (6th Cir. 2007).

## I.   Factual Averments

In 2012, Riley obtained a mortgage loan from Primelending in the amount of $168,550.00 with interest at 4.250% [DE 1, Compl. at ¶ 10, 11; DE 23-2, Tendered Amended Complaint (hereinafter, "Amend. Compl.") at ¶¶ 11, 12], executing a promissory note in

favor of Primelending.[2] Repayment of the loan was secured by a Mortgage, dated February 8, 2012, encumbering the real property in Richmond, Kentucky. Shortly after origination, the loan was transferred to Wells Fargo [Compl. at ¶ 12; Answer at ¶ 12; Amend. Compl. at ¶ 12.] About a year later, Plaintiff fell behind on her mortgage payments and entered into a Loan Modification Agreement with Wells Fargo in June 2013, curing her default, bringing the loan current, and reducing the interest rate to 3.750% and the monthly payment to $812.36. [Compl. at ¶ 13-14; Amend. Compl. at ¶¶ 13-14.]

In relevant part, the mortgage provides in paragraph 9,

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Agreement . . . or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights . . . including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or danger conditions, and have utilities turned on or off.

Riley is a Master Sergeant in the United States Army Reserves and was called to active duty and deployed to Fort Bliss, Texas, on March 18, 2015, where she served as the non-commissioned officer

---

[2] Plaintiff's Complaint and tendered Amended Complaint, tell essentially the same story.

in charge of Operations for Civilians.[3] [*Id.* at ¶¶ 16-17; Amend. Compl. at¶¶2, 16-17.] During this time, in mid-2015, she struggled to make her monthly mortgage payments as she maintained her residence in Richmond, Kentucky, and her residence in Ft. Bliss [Compl. ¶¶17-19, 21, 60; Amend. Compl. at ¶¶ 18-19]. In late spring 2015, Riley fell victim to identity theft, becoming aware of it in August 2015, when her automated ACH withdrawals arranged for her payments for her bi-monthly mortgage payments could not be processed from her USAA account and were returned "NSF." [Compl. at ¶¶ 21-22; Amend. Compl. at ¶¶21-22.] As soon as she realized that her withdrawals were not being processed, she contacted Defendant and made a full month (i.e., two bi-monthly) payments on September 17, 2016 [Compl. at ¶ 23; Amend. Compl. at ¶ 23 .]. She intended to make another such payment prior within a few weeks, but was advised by Defendant's agent when she called that Defendant was accelerating her loan and would not accept anything but full payment of all arrearages. [Compl. at ¶¶ 24, 28; Amend. Compl. at ¶¶ 24, 28.] Riley was unable to make a large lump-sum payment to catch up her loan for the month that she had missed and, instead, applied for another loan modification or forbearance agreement, which was provided by Defendant in December 2015: a three-month forbearance agreement under which she would pay $300/month until

---

[3] Wells Fargo received copies of her Orders and was advised of Plaintiff's status on active duty. [Compl. at ¶ 67, Amend. Compl. at ¶ 78.]

the end of her deployment in March 2016. [Compl. at ¶ 31; Amend. Compl. at ¶ 30.] Plaintiff made these payments in February, March, and April, renewing her application for permanent modification upon her return from active duty. [Compl. at ¶ 49; Amend. Compl. at ¶ 30, 58.]

Riley avers that Wells Fargo, through its agent or an independent contractor engaged for such purposes, entered her home around December 21, 2015, then again on January 10, 2016, and a third time in the spring of 2016. [Compl.. at ¶ 31, 41, 50; Amend. Compl. at ¶ 42, 43, 50.] In doing so, she avers that Defendant caused property damage to the doors, plumbing, and appliances when they forced entry by prying open the doors, changed the locks, and shut off utilities. [Compl. at ¶ 36; Amend. Compl. at ¶¶ 43, 45, 50, 63-66.] Wells Fargo's agent or the independent contractor also rifled through the personal property in every single room in her home and posted conspicuous vacancy notices on the front door, effectively giving notice that she was away to anyone who happened by the home. [Compl.. at ¶¶ 36-37; Amend. Compl. at ¶¶ 45-46, 62] Defendant's agent or the independent contractor also left the back door open and unsecured. [Compl. at ¶ 36; Amend. Compl. at ¶45.] Riley's family noticed that outside patio items, including a gas grill and law furniture, began disappearing from her home after the notices were placed on the doors. [Compl. at ¶ 47; Amend.

Compl. at ¶¶ 4, 53]  She later discovered that tools and ammunition were missing from the home. [*Id.* at ¶ 58, 68-69.]

Plaintiff avers that she spent many hours on the phone with Defendant's agents, explaining that she was on active duty and that her family and friends were monitoring her home. [*Id.* at ¶ 39.] She forbade further entry to Defendant after the first entry into the home, and her family changed the locks and resecured the home and removed the notices [Compl. at 39-40; Amend. Compl. at ¶ 49.] Defendant's agents or the indepdent contractor entered the home at least twice more after the initial intrusion, again breaking into a secured door and changing the locks. She returned home at the end of her active duty service, on March 17, 2016. She avers that during Wells Fargo's agent or its independent contractor's third entry into her home in the spring of 2016, it turned the utilities back on, and "un-winteriz[ed]" her home. [Compl. at ¶ 51; Amend. Compl. at ¶ 59.] She does not aver that she was prevented from or had issues with accessing the Property when she returned to Kentucky in March 2016. [Compl. at ¶¶52-58; Amend. Compl. at ¶ 61] She complains that she experienced "severe stress and overwhelming anxiety about what was happening at [her] home . . . while . . . completing her mission unable to do anything to stop it" and avers in her tendered Amended Complaint that she would try to hide her tears as she sat in her car on the phone trying to prevent Defendant from physically interfering with her

home, trying to avoid the appearance that she was distracted from her mission at Ft. Bliss by the events unfolding in Richmond, Kentucky. [Compl. at ¶ 45; Amend. Compl. at ¶¶ 54, 57.]

## II.  Servicemembers Civil Relief Act, 50 U.S.C. § 3953(c)

First, the Court considers Plaintiff's claim under the Servicemembers Civil Relief Act ("SCRA"), which provides that "seizure of property for a breach of an obligation . . . shall not be valid if made during, or within one year after, the period of the servicemember's military service except (1) upon a court order . . . or if made pursuant to an agreement as provided in section 3918. . . ." 50 U.S.C. § 3953(c); *see* 50 U.S.C. § 3918 (providing for waiver of rights under chapter if in writing and a separate instrument from obligation or liability to which it applies).

In her tendered Amended Complaint, Plaintiff avers that she was on active duty [DE 75] and that Defendant was aware of her deployment [Amend. Compl. at ¶ 76] because she provided them with a copy of her orders and was in almost daily contact with an agent regarding the situation with her bank account and a forebearance agreement. She avers that Wells Fargo "seized" her home in violation of § 3953(c) when its agent or an independent contractor engaged to do so entered the home, the locks were changed, and her utilities were cut off, notwithstanding the fact that her home was neither in foreclosure nor vacant and over her objection, all without Court permission to take such action.

Wells Fargo would have this Court narrow § 3593(c)'s protections for service members on active duty, taking the position that the "SCRA does not provide relief where there is no actual institution of proceedings against secured property or actual repossession," quoting *Rodriguez v. Amer. Express*, No. CV F 03-5949 AWI LJO, 2006 WL 908613, *10 (E.D. Cal. Apr. 7, 2006), and that, absent some sort of court proceeding, the SCRA only applies to actual non-judicial foreclosure actions, citing *Wilhoit v. SunTrust Mortgage*, No. 12-cv-8386, 2013 WL 1111823 (N.D. Ill. Mar. 18, 2013). The Court finds the situation in *Rodriguez*, which arose from a lender's filing of a judicial foreclosure action while the borrower was on active duty in Afghanistan, to be inapposite because there was in fact a judicial foreclosure action from which the borrower demanded relief which does not exist in this case. The fact that the borrower did not premise a request for relief on the fact that the lender also changed the locks to the property such that the borrower "was unable to gain entrance" when she returned from service does not mean that a borrower could never recover on that basis, as Wells Fargo theorizes. Nor is it particularly meaningful as Wells Fargo insists, that the *Willhoit* court concluded that § 3953(c) (formerly 50 U.S.C. App. § 533(c)(1)) "applies only to non-judicial foreclosures, not to foreclosures obtained via a court order." 2013 WL 1111823 at *13-

14. Section 3953(c) also applies, by its own terms, to "seizure of property" as a separate category of forbidden action.

"As in any statutory construction case, '[w]e start, of course, with the statutory text,' and proceed from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'" *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013) (quoting *BP America Production Co. v. Burton,* 549 U.S. 84, 91 (2006)). To seize something is to take possession of it. *See, e.g.*, https://www.merriam-webster.com/dictionary/seize, definition 2 (last visited May 16, 2017). To take possession of something does not always require that legal title become vested in the party which takes possession. For example, the Court frequently encounters the concept of seizure in matters involving the Fourth Amendment to the United States Constitution, which contemplates a meaningful interference with an individual's possessory interests in one's property. *See, e.g., United States v. Roberts*, 603 Fed. App'x 426, 435-36 (6th Cir. 2015). Here, changing the locks on Riley's home and interfering with her arrangements concerning the utilities interfered with her possession – her authority as a homeowner to control access to and to make decisions concerning the upkeep of the home – for a period of time in 2015 and 2016, even if Wells Fargo later ceased to do so before her return from active duty. As far as this Court is concerned and even in light

of the caselaw cited by Wells Fargo, there was a seizure of her home, no matter how minimal Wells Fargo might believe it to be. The question of what that is worth is a question for another day. Amendment of the complaint with respect to this claim will be permitted as it is not futile, and Defendant's Motion for Judgment on the pleadings denied as moot on this claim.

### III. Servicemembers Civil Relief Act, 50 U.S.C. § 3937

In Plaintiff's tendered Amended Complaint, she avers that Defendant violated the SCRA, 50 U.S. § 3937, the maximum interest provision, by assessing "miscellaneous fees" such that she was effectively charged in excess of 6% during the time of her active duty. [Amend. Compl. at ¶ 56.] Wells Fargo counters with an argument that Plaintiff does not aver that she actually paid the excess interest or fees while on active duty (or at any time, for that matter) and that, as a result, her claim fails. The Court agrees. *See Banaszak v. CitiMortgage, Inc.*, No. 13-CV-13710, 2014 WL 4489497, at *3 (E.D. Mich. Sept. 10, 2014) (explaining that courts have uniformly held that if a servicemember never actually pays more than the 6.000% rate, the statute is not violated, even if they incur or are charged that rate) (citing *Newton v. Bank of McKenny,* Civil No. 3:11cv493-JAG, 2012 WL 1752407, at *9 (E.D.Va. May 16, 2012); *Frazier v. HSBC Mortgage Servs.,* 401 F. App'x 436, 439 (11th Cir. 2010); *Koenig v. Waukesha State Bank,* No. 05-C-255, 2006 WL 2334841, at *4 (E.D.Wis. Aug.10, 2006)). Therefore, Riley's

Motion to Amend the Complaint is futile in this regard, and relief will be denied.

**IV. Usury**

KRS 360.020 prohibits the "taking, receiving, reserving, or charging a rate of interest greater than is allowed by KRS 360.010," which provides that "the legal rate of interest is eight percent (8%) per annum." In her proposed amended complaint, Plaintiff avers that "Wells Fargo is charging fees and expenses on Ms. Riley's loan that are causing an interest rate of greater than 6% to be incurred" [Compl. at ¶ 74; Amend. Compl. at ¶¶56, 90.] Her Tendered Amended Complaint suggests that the 6% interest cap imposed by the SCRA, 15 U.S.C. § 3937, is coopted into the Kentucky usury statute. However, the National Bank Act, 12 U.S.C. § 85 generally preempts application of the state law action against a national bank, like Wells Fargo, although the "rate of interest is generally tied to the rate allowed in the state where the bank is located." The parties agree that Wells Fargo is a "national bank" [Compl. at ¶3; Answer at ¶3; Proposed Amend Compl. at ¶3.] Wells Fargo is a national bank chartered in South Dakota, and South Dakota does not set a maximum interest rate so long as the rate is set by a written agreement" between the parties.[4] *See Taft v.*

---

[4] The court may take judicial notice of the following information on the FDIC's website regarding Wells Fargo's bank information: https://www5.fdic.gov/idasp/advSearchLanding.asp. *See also Pruitt v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 172884, FN. 4 (Dist. Maryland 2015)(taking judicial notice of Wells Fargo's status as a national bank).

*Wells Fargo Bank*, 828 F. Supp. 2d 1031, 1035 (D. Minn. 2011); S.D. Codified Laws §§ 54-3-1.1, 54-3-13.  It follows that amending this claim would be futile.  Accordingly, Plaintiff's motion to amend is denied in this regard, and her claim for usury in the original Complaint is dismissed.

### V. Fair Debt Collection Practices Act

Riley's Fair Debt Collection Practices Act ("FDCPA") claim fails, both in her effort to amend it and in her original complaint, because Wells Fargo is Plaintiff's creditor under the terms of their Agreement and, thus, is not a debt collector for the purposes of the Act. "The FDCPA governs the conduct of debt collectors, the definition of which specifically excludes 'any person collecting or attempting to collect any debt owed ... to the extend such activity ... (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.'" *Herzig v. Suntrust Mortg., Inc.*, No. 3:13-CV-299-S, 2014 WL 1319468, at *10 (W.D. Ky. Mar. 31, 2014) (quoting 15 U.S.C. § 1692a(6)(F)). "Thus, a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Id*. (quoting *Belin v. Litton Loan Servicing, LP,* No. 8:06-cv-760-T-24EAJ, 2006 WL 1992410, at *2 (M.D.Fla. July 14, 2006); citing *Warren v. Countrywide Home Loans, Inc.,* 342 F.App'x 458, 460-61

(11th Cir. 2009); *Foxx v. Ocwen Loan Servicing, LLC*, No. 8:11-CV-1755-T-17EAK, 2012 WL 2048252, *9 (D.C.Fla. June 6, 2012)); *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007)). Amendment of her complaint would be futile in this regard, and judgment on the pleadings with respect to the claim in her original Complaint is appropriate. Plaintiff's motion to amend will be denied, and her claim in the Complaint will be dismissed.

## VI. Kentucky Consumer Protection Act

The Kentucky Consumer Protection Act ("KCPA") protects "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes" from "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. § 367.220(1), 367.170. The Court of Appeals of Kentucky has held that the KCPA does not apply to real estate transactions by an individual homeowner. *Craig v. Keene*, 32 S.W.3d 90, 91 (Ky. 2000). Moreover, it has defined the term "real estate transaction" as "encompass[ing] any transaction touching upon or involving real estate." *Todd v. Ky. Heartland Mortg., Inc.*, No. 2002-CA-002038-MR, 2003 WL 21770805, at *3 (Ky. Ct. App. Aug. 1, 2003). The transaction in question involves a mortgage loan for Plaintiff's home, and, thus, the KCPA is not applicable because this is real estate transaction by an individual homeowner. Amendment of the Complaint with respect to

14

this claim would be futile and will be denied.  Additionally, the claim in the original Complaint will be denied.

## VII. Breach of Contract and Trespass

Riley avers that Wells Fargo's entry into her home and all that followed with respect to the utilities and damage to the home and its contents were in violation of Paragraph 9 of the parties' agreement.  Wells Fargo takes the position, however, that her breach of contract claim fails as a matter of law because its agent or independent contractor's entrance into and efforts to secure and winterize the property were authorized by and consistent with the terms of the Mortgage.  Similarly, Wells Fargo argues that Plaintiff's trespass claim fails.[5]

---

[5] Wells Fargo also argues that Plaintiff's claims fail because she, in her tendered Amended Complaint, has changed the word "agent" to "independent contractor" in describing the party that actually came to her house to "secure" and "winterize" it at Defendant's request.  Defendant argues that it cannot be held liable for the intentional acts of an independent contractor, citing *Dickinson v. Countrywide Home Loans, Inc.*, No. 1:10-cv-688, 2012 WL 163883, *6 (W.D. Mich. Jan. 19, 2012) (holding that, under Michigan law, Plaintiff's claims for damages arising out of stolen personal property failed because there was no evidence that the lender could have anticipated the wrongful acts of the independent contractor sent to secure the borrower's property after default) and *Nazar v. Branham*, 291 S.W.3d 599, 606 (Ky. 2009) (holding that principal may be held vicariously liable for the negligent acts of his or her agent, but generally is not held liable for the conduct of an independent contractor and that, if an individual is free to determine how work is done and the principal cares only about the end result, then that individual is an independent contractor). That may be the case, but the Court leaves that for determination under Kentucky law at a later date.  Suffice it to say, at least some portion of the intentional acts committed by the agent or independent contractor sent by Wells Fargo to "secure" and "winterize" Plaintiff's home may have been anticipated by Defendant – including the damage to doors during the forced entry into the home and the posting of notices.  Whether Wells Fargo can be responsible for failure to secure the doors by its independent contractor or the specifics of how its independent contractor "winterized" the home is another story—one to be told and appreciated on another day.

15

In Kentucky, breach of contract requires "(1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff." *Johnston v. Robert Bosch Tool Corp.*, Civil Action No. 4:11-cv-00009-JHM, 2012 WL 4324934, *3 (W.D.Ky. Sept. 20, 2012) (*citing Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001)). Where a defendant complies with the terms of a contract, there is no claim for breach of contract. *See Crail v. Best Buy Co.*, Civil Action No. 2006-227 (WOB), 2007 WL 272602, *3-4 (E.D.Ky. Sept. 17, 2007).

Trespass, under Kentucky law, is actionable where a party "enter[ed] or remain[ed] upon land in the possession of another without the possessor's consent." *Bradford v. Clifton*, 379 S.W.2d 249, 250 (Ky. 1964). The entry must be unauthorized. *Adams' Adm'r v. Callis & Hughes*, 253 Ky. 382, 386 (Ky. 1934). Thus, for example, there is no trespass where the owner or person in possession of real estate has given authority or permission for another to enter or remain on the land through an easement, *see Townsend v. Gulf Interstate Gas Co.*, 308 S.W.2d 793, 795 (Ky. 1957), or when an agreement authorizes entry onto property to remedy code violations, *see Hyde v. Dayton*, Civil Action No. 2008-73 (WOB), 2009 WL 3586423, *6-7 (E.D.Ky. Oct. 28, 2009). Courts have dismissed claims for trespass where a mortgage or deed of trust specifically authorizes access to secure a property once a borrower is in default or property is abandoned. *See, e.g., Bennett v.*

*Bank of Amer.*, Civil Action No. 3:12cv34-HEH, 2012 WL 1354546, *10 (E.D. Va. Apr. 18, 2012) (dismissing claim for trespass where agreement "authorized" lender to enter onto property to "change locks" only if borrower "fail[ed] to perform the convenants and agreements contained" in Deed of Trust); *Thompson v. JPMorgan Chase Bank, N.A.,* Civil No. WDQ-13-1982, 2014 WL 4269060, *20-21 (Dist. Md. Aug. 27, 2014) (granting motion to dismiss borrowers' trespass claim because the deed of trust permitted the lender to enter the property upon default and do "whatever is reasonable or appropriate to protect its interest"); *PNC Bank, N.A. v. Van Hoornaar*, 44 F.Supp.3d 846, 856 (E.D. Wisc. 2014) (granting motion to dismiss trespass claim since Paragraph 9 of the Mortgage permitted entry upon default to do what was "reasonable or appropriate to protect Lender's interest in the Property[,]" including "entering . . . to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off" where judicial foreclosure action had already commenced and property was considered "abandoned" by lender); *but see Kaczmarek v. JPMorgan Chase Bank, N.A.*, No. 11-15214, 2012 WL 2115263, *3 (E.D. Mich. June 11, 2012) (denying motion for judgment on the pleadings and holding that, on facts as averred, allegations were sufficient to establish that lender exceeded scope of consent granted in mortgage agreement to take "reasonable action to protect and preserve . .

. vacant or abandoned [p]roperty" when it secured property after providing only eight days for borrower to confirm that property was vacant in a letter advising that property would be secured).

In this instance, if Defendant's entrance onto the property and its actions with respect to the property were authorized by the parties' agreement, Plaintiff's claims for breach of contract and trespass would fail. The Court cannot, at this time, determine as a matter of law whether Wells Fargo "d[id] and pa[id] for whatever is *reasonable* or *appropriate* to protect Lender's interest in the Property" (emphasis added) on the facts as pleaded. There is no averment, for example, that Riley had failed to secure her home against intruders or the elements with respect to the locks on the doors or windows or that there was some clear indication that she had failed to winterize her home such that it was reasonable or appropriate to enter her home to "winterize" it upon her default as Wells Fargo claims – particularly where Wells Fargo's agent or independent contractor's entry and modifications to Plaintiff's own provisions to safeguard her home resulted in damage to the home and left it open for further malfeasance by others. Nor can the Court say, as a matter of law, that her trespass claim lacks merit. To the extent that Defendant's authority to enter onto the premises is controlled by the terms of the parties' Agreement, the issue of whether a trespass occurred must be passed until the merits of the breach of contract claim

are determined. It is not futile to amend the complaint, and her motion will be granted, and Defendant's Motion for Judgment on the pleadings denied as moot.

## VIII. Intentional Infliction of Emotional Distress

Under Kentucky law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See* Restatement (Second) of Torts 46. Outrageous conduct "is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984) (explaining that conduct must offend the generally accepted standards of decency and morality, thus, limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved).

In this case, the Plaintiff avers emotional distress arising from Wells Fargo's actions with respect to her home, describing the stress and the emotional response prompted by Defendants' actions while she was in an active duty situation. At bar is whether Defendants' actions, taken with knowledge of Plaintiff's active duty status and allegedly undertaken to "secure" and "winterize" the house after a default, were "extreme and outrageous" or whether Wells Fargo acted either intentionally or

recklessly to cause the distress through its agent or independent contractor. According to the Complaint and the tendered Amended Complaint, Defendants' agents or independent contractors entered the home without notice to Plaintiff, using a crowbar to open the door and drilling through the door knobs and locks to remove and replace them. She avers that, while these individuals were in her home, someone rifled through Plaintiff's belongings, some of which were taken from her home, and left the rear door of her home unsecured as they exited. Then, they did it again. Each time Wells Fargo was aware that she was on active duty at a distance from her home, unable to prevent Wells Fargo's agents or the independent contractors hired to do so from taking action in the moment.

It is for the court to decide whether the conduct complained of can reasonably be regarded to be so extreme and outrageous as to permit recovery. *Goebel v. Arnett*, 259 S.W.3d 489, 493-94 (Ky. Ct. App. 2007) (holding that behavior was outrageous when defendant represented plaintiff in an adoption matter without disclosing that she also represented the adoption agency and then falsely represented to the court that the baby's father had not asserted his right to custody of the child and urged plaintiff to falsely claim that she had been raped by the baby's father, resulting in the pregnancy) (citing *Whittington v. Whittington,* 766 S.W.2d 73 (Ky. Ct. App. 1989)). "Kentucky has previously recognized a cause

of action for tortious conduct in cases involving humiliating methods of debt collection, [. . .] embarrassment caused by an employer's methods in combatting union organization, [. . .] and a newspaper's liability for putting a private person in 'false light'. . . ." *Craft*, 671 S.W.3d at 250 (citing *Brents v. Morgan*, 299 S.W. 967 (Ky. 1927), *Wheeler v. P. Sorensen Mfg. Co.*, 415 S.W.2d 582 (Ky. 1967), *McCall v. Courier Journal*, 623 S.W.2d 882 (Ky. 1981)). In this case, Wells Fargo's conduct, as pleaded in the Complaint and the tendered Amended Complaint, is sufficient to state a claim under Kentucky law.

Even though Plaintiff was behind in her payments and was indebted to Wells Fargo on the mortgage before that, Wells Fargo's ability to collect that debt was limited by federal law's provision for active duty service members. *See*, e.g., *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 730-32 (6th Cir. 2007) (holding that claim of outrageous conduct under Tennessee law were sufficient to survive motion to dismiss where creditor insinuated that criminal prosecution could be used to pursue the debtor when it was not, in fact, available under the law). In other words, Wells Fargo's decision to "seize" the property, i.e., deprive Plaintiff of or interfere with her decision-making power with respect to her home, during the period of her active duty service, with knowledge of her active duty status, and with knowledge that she was stationed away from home was intentional and may be called extreme or

outrageous under the circumstances as averred. Time and discovery will tell more about the methods undertaken to enforce the debt and secure the property, but the Court concludes that this matter is best left for a later date on summary judgment or at trial. Accordingly, amendment of the complaint with respect to this claim will be permitted, and the motion for judgment on the pleadings with respect to the claim in the original Complaint is denied s moot.

Accordingly, for all of the reasons stated above, **IT IS ORDERED**:

(1) that Defendant's Motion for Judgment on the Pleadings [DE 13] is **GRANTED IN PART** and **DENIED IN PART**;

(2) that Plaintiff's Motion to Amend Complaint [DE 23] is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED**:

(3) that the parties joint Motion to Stay All Discovery Deadlines and to Continue the Trial Date in Order to permit a settlement conference with Judge Wier to occur [DE 33] is **GRANTED**;

(4) that all deadlines with respect to discovery and pretrial practice, as well as the trial date in this matter, are **CONTINUED GENERALLY**;

(5)    that the parties shall contact the magistrate judge within **three (3) days** of entry of this order in order to schedule a settlement conference;

(6)    that the parties shall file a **STATUS REPORT** with this Court no later than **three (3) days** from the date that a settlement negotiation is conducted with the magistrate judge, advising the Court of what matters remain for trial and proposing a schedule for any remaining discovery, motion practice, or pretrial matters, as well as a new trial date.

This the 22nd day of May, 2017.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge